

**SIGNED this 11 day of January, 2013.**

*James P. Smith*

**James P. Smith**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

|                        |   |                        |
|------------------------|---|------------------------|
| In the Matter of:      | : | Chapter 13             |
|                        | : | Case No. 12-51625-JPS  |
| JOHN L. SCOTT, JR.,    | : |                        |
|                        | : |                        |
| Debtor                 | : |                        |

_____

|                        |   |                        |
|------------------------|---|------------------------|
| DONALD L. LUNDY,       | : | Chapter 13             |
| KATHRYN D. LUNDY,      | : | Case No. 12-51638-JPS  |
|                        | : |                        |
| Debtors                | : |                        |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

For Debtor Scott:     John K. James
            Attorney At Law
            1109 Russell Parkway, Ste. 2
            Warner Robins, GA 31088


For Debtors Lundy:     Danny L. Akin
            Rob Matson
            Akin, Webster and Matson, PC
            544 Mulberry Street, Ste. 400
            P. O. Box 1773
            Macon, GA 31202

For Chapter 13 Trustee:   Tony Coy
            Camille Hope
            Office of the Chapter 13 Trustee
            P.O. Box 954
            Macon, GA 31202

2

## MEMORANDUM OPINION

Before the Court are two Chapter 13 cases where the Trustee objects to confirmation because the debtors are not committing certain social security benefits to their Chapter 13 plans.  Hearings on confirmation and the Trustee's objections were held on October 9, 2012.  Since both cases present similar issues, the Court will publish one opinion addressing the issues presented.  The Court, having considered the record, the arguments and the briefs of counsel, and the applicable law, now publishes this memorandum opinion.

## BACKGROUND

Upon filing a Chapter 13 petition, a debtor must complete Schedules I and J[1] by listing his and, if married, his spouse's average monthly income[2] and the average monthly expenses of the debtor and his family[3].  The debtor's monthly net income[4] is then determined by subtracting his monthly expenses from monthly income.

The debtor must also complete Form B22C[5] by listing his and, if married, his spouse's average monthly income that was received during the six months prior to the

---

[1] 11 U.S.C. § 521(a)(1)(B)(ii).

[2] The income of the debtor's spouse must be listed whether or not a joint bankruptcy petition is filed, unless the spouses are separated and a joint petition is not filed.  See Official Form 6I; Fed.R.Bankr.P. 9009 (Official Forms shall be construed to be consistent with the Rules and the Code).

[3] See Official Form 6J.

[4] "Monthly net income" is not a defined term, but is simply the designation given on Schedule J, Line 20.c. as the difference between Schedule I average monthly income and Schedule J average monthly expenses.

[5] Fed.R.Bankr.P. 1007(b)(6).

bankruptcy filing.[6]  If the debtor and his spouse's monthly income so determined exceeds the applicable median family income in their state of residence, then the debtor completes Parts IV and V of Form B22C and the debtor's monthly disposable income is determined by subtracting certain standardized deduction allowances[7] and certain actual monthly expenses from the debtor's monthly income.[8]  If the debtor and his spouse's monthly income does not exceed the applicable median family income, then the debtor's monthly disposable income is not determined by completing Parts IV and V of Form B22C, but by subtracting his "reasonably necessary" expenses from his current monthly income.[9]

The sources of monthly income and the allowable expenses and deductions that are to be listed on Schedule I and J and on Form B22C are not identical, which can yield to substantially different results when determining the debtor's net or disposable income.  For example, as in the cases at bar, social security benefits must be included as income on Schedule I,[10] but are excluded from income on Form B22C[11].  In the cases at bar, the Trustee and the debtors disagree on whether these social security benefits must be committed to the debtors' plan payments in order for the plans to be confirmable.

---

[6] See Official Form 22C, Line 1.

[7] The standardized allowances are derived from the IRS National Standards and Local Standards for certain categories of expenses.  11 U.S.C. § 707(b)(2)(A)(ii).

[8] See 11 U.S.C. § 1325(b)(2),(3); Fed.R.Bankr.P. 1007(b)(6).

[9] See 11 U.S.C. § 1325(b)(2).

[10] See Official Form 6I, Line 11.

[11] See Official Form 22C, Line 9.

Scott Case Facts.

John L. Scott, Jr. ("Scott") filed his Chapter 13 petition on June 22, 2012. Scott is married, but his spouse ("Ms. Scott") did not file for bankruptcy. Scott's current monthly income on Form B22C is $4,953 and his annualized current monthly income is $59,436. Since this is more than the median annual income for a household of two in Georgia ($52,313), Scott is an "above-median-income" debtor and the "applicable commitment period"[12] for Scott is five years. 11 U.S.C. § 1325(b)(4)(A)(ii)(II).

According to his Schedule I, Scott has average monthly income of $2,760. Ms. Scott is not employed and receives $780 per month in social security benefits. Thus, Schedule I shows that Scott and his spouse have combined average monthly income of $3,540. Schedule J shows average monthly expenses of $2,951, resulting in a monthly net income (including Ms. Scott's social security benefits) of $589 per month. However, Scott's monthly disposable income on Form B22C is a negative $949.80 when Ms. Scott's social security benefits are removed and after applicable expenses (calculated pursuant to 11 U.S.C. § 1325(b)(3)) are deducted.

Scott's plan proposes to pay $42 per week for a period of fifty-nine months. This will result in unsecured creditors receiving $5,126.87 (a nineteen percent distribution)[13]. The Trustee objects to confirmation of the plan on the grounds that the plan does not comply

---

[12] The "applicable commitment period" is the duration (either 3 or 5 years) that a Chapter 13 plan must run.

[13] Some of Scott's plan payments will be distributed to secured creditors.

5

with the "projected disposable income" requirement of 11 U.S.C. § 1325(b)(1)(B). The

Trustee argues that if Ms. Scott's social security benefits were included in the plan payments

and the monthly net income of $589 shown on Schedule J was paid into the plan, unsecured

creditors would be paid one hundred percent of their claims. The Trustee also argues that

the plan has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3) because

it excludes Ms. Scott's social security benefits.

Lundy Case Facts.

Donald L. and Kathryn D. Lundy (the "Lundys") filed their joint Chapter 13 petition

on June 24, 2012. The median annual income for a household of two in Georgia is $52,313.

The Lundys' annualized current monthly income on Form B22C is $48,042. Accordingly,

the Lundys are "below-median-income" debtors and the "applicable commitment period" for

the Lundys is three years. 11 U.S.C. § 1325(b)(4)(A)(i).

Mr. Lundy is retired and receives monthly pension income of $3,541 and monthly

social security benefits of $1,393. Ms. Lundy is employed and receives monthly income of

$588 per month. Thus, their amended Schedule I shows that their combined average

monthly income is $5,522. Their amended Schedule J shows that their average monthly

expenses are $4,441, leaving monthly net income of $1,081. However, when Mr. Lundy's

social security benefits are removed, their monthly net income is a negative $312.

The Lundys have filed a plan which proposes to pay $550 per month for sixty

months. This will result in a distribution to unsecured creditors of approximately twenty-

one percent.  The Trustee objects to confirmation of the plan on the grounds, inter alia,[14] that

by excluding Mr. Lundy's social security benefits, the Lundys are not paying all of their

monthly net income as shown on the amended Schedule J.  The Trustee argues that the plan

proposed ($550 per month for sixty months) will pay approximately $26,225.54 to

unsecured creditors.  However, the Trustee argues that if all of the monthly net income of

$1,081 was paid into the plan for thirty-six months (the "applicable commitment period" for

these debtors), unsecured creditors would receive approximately $31,550.63.  Thus, the

Trustee contends that the Lundys' plan does not comply with the "projected disposable

income" requirement of 11 U.S.C. § 1325(b)(1)(B) because it excludes Mr. Lundy's social

security benefits.  The Trustee also argues that the plan has not been proposed in good faith

as required by section 1325(a)(3) because of the exclusion of the social security benefits.

Finally, the Trustee argues that the Lundys have not shown sufficient "cause" to extend the

duration of their plan from three years to five years.  See 11 U.S.C. § 1322(d)(2).

The confirmation hearings for both cases were held on October 9, 2012.  After

hearing argument of counsel, the Court invited the parties to file briefs supporting their

positions.  The Court has considered those briefs and now publishes this opinion.

## **DISCUSSION**

Statutory Framework and Analysis.

Section 1325(b)(1) provides that if the trustee or an unsecured creditor objects to

confirmation of the debtor's plan, the debtor must either pay unsecured creditors in full or

---

[14]  The Trustee also objected to the plan's treatment of a secured claim co-signed by a
non-debtor.  This objection was resolved and withdrawn prior to the confirmation hearing.

7

pay all "projected disposable income" to be received by the debtor over the duration of the

plan.  Specifically 11 U.S.C. § 1325(b) provides, in pertinent part:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>> (B) the plan provides that all of the debtor's <u>projected disposable income</u> to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) For purposes of this subsection, the term "<u>disposable income</u>" means <u>current monthly income</u> received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended–
>> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>>> (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
>
> (3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than–...
>> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals;...

(emphasis added).

Neither the Scott plan nor the Lundy plan proposes to pay unsecured creditors' claims in full.  Accordingly, the plans must provide for payment of all the debtors' "projected disposable income."

In Hamilton v. Lanning,[15] the Supreme Court addressed the issue of how "projected disposable income" should be calculated under § 1325(b)(1)(B).  The Supreme Court explained:

> Before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), 119 Stat. 23, the Bankruptcy Code (Code) loosely defined "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended" for the "maintenance or support of the debtor," for qualifying charitable contributions, or for business expenditures.  § 1325(b)(2)(A), (B).
>
> The Code did not define the term "projected disposable income," and in most cases, the bankruptcy courts used a mechanical approach in calculating projected disposable income....
>
> BAPCPA left the term "projected disposable income" undefined but specified in some detail how "disposable income" is to be calculated. "Disposable income" is now defined as "current monthly income received by the debtor" less "amounts reasonably necessary to be expended" for the debtor's maintenance and support, for qualifying and charitable contributions, and for business expenditures.  § 1325(b)(2)(A)(i) and (ii) (2006 ed.).  "Current monthly income," in turn, is calculated by averaging the debtor's monthly income during what the parties refer to as the 6-month look-back period, which generally consists of the six full months preceding the filing of the bankruptcy petition.  See § 101(10A)(A)(i).  The phrase "amounts reasonably necessary to be expended" in § 1325(b)(2) is also newly defined.  For a debtor whose income is below the median for his or her State, the phrase includes the full amount needed for "maintenance or support," see § 1325(b)(2)(A)(i), but for a debtor with income that exceeds the state median, only certain specified expenses are included, see §§ 707(b)(2), 1325(b)(3)(A).

_____

[15] 130 S.Ct. 2464, 177 L.Ed 2d 23 (2010).

9

130 S.Ct. at 2469-70. (footnotes omitted).  The Supreme Court concluded that "projected

disposable income" was calculated pursuant to the "forward-looking approach".  Under this

approach, the "current monthly income", as defined by 11 U.S.C. § 101(10A), is multiplied

by the number of months in the plan.  This amount is then adjusted to "account for changes

in the debtor's income or expenses that are known or virtually certain at the time of

confirmation."  Id. at 2478.

11 U.S.C. § 101(10A) provides that "current monthly income":

> (A) means the average monthly income from all sources that
> the debtor receives (or in a joint case the debtor and the
> debtor's spouse receive) without regard to whether such
> income is taxable income, derived during the 6-month period
> ending on–
>> (i) the last day of the calendar month
>> immediately preceding the date of the
>> commencement of the case if the debtor files
>> the schedule of current income required by
>> section 521(a)(1)(B)(ii); or
>> (ii) the date on which current income is
>> determined by the court for purposes of this
>> title if the debtor does not file the schedule of
>> current income required by section
>> 521(a)(1)(B)(ii); and
> (B) includes any amount paid by any entity other than the
> debtor (or in a joint case the debtor and the debtor's spouse),
> on a regular basis for the household expenses of the debtor or
> the debtor's dependents (and in a joint case the debtor's
> spouse if not otherwise a dependent), but excludes benefits
> received under the Social Security Act, payments to victims of
> war crimes or crimes against humanity on account of their
> status as victims of such crimes, and payments to victims of
> international terrorism (as defined in section 2331 of title 18)
> or domestic terrorism (as defined in section 2331 of title 18)
> on account of their status as victims of such terrorism.

(emphasis added).

Mr. Lundy's Social Security Benefits.

In the Lundy case, the Trustee makes a number of arguments as to why Mr. Lundy's

social security benefits should be included in calculating "projected disposable income".

These arguments are based on the definitions of the terms "projected disposable income"

and "disposable income", the application of the Supreme Court's decision in Lanning to

these terms, the pre-BAPCPA treatment of social security benefits and the contention that

this treatment remains unchanged after the enactment of BAPCPA. However, the Trustee

has failed to cite a single post-BAPCPA case supporting her positions.  In fact, the Court has

found only two reported decisions supporting the Trustee's position.

The first case is In re Rodgers, 430 B.R. 910 (Bankr. M.D. Fla. 2010).  However, in

the subsequent case of In re Vandenbosch, 459 B.R. 140, 143 (M.D. Fla. 2011), the district

court held that Rodgers had relied on pre-BAPCPA case law and was wrongly decided.  The

second case, In re Nicholas, 458 B.R. 516 (Bankr. E.D. Ark. 2011), relied on a bankruptcy

court's decision in Utah, In re Cranmer, that was reversed on appeal shortly after Nicholas

was decided.  In re Cranmer, 433 B.R. 391 (Bankr. D. Utah 2010), rev'd sub nom. Cranmer

v. Anderson, 463 B.R. 548 (D. Utah 2011), aff'd sub nom. Anderson v. Cranmer (In re

Cranmer), 697 F.3d. 1314 (10th Cir. 2012).

The three circuit courts of appeal to consider the issue have all concluded that social

security benefits are not to be included in the calculation of "projected disposable income".

See Baud v. Carroll, 634 F.3d. 327 (6th Cir. 2011), cert. denied, 1325 S.Ct. 997, 181 L.Ed 2d

732 (2012); Cranmer, 697 F.3d at 1318; Beaulieu v. Ragos (In re Ragos), 700 F.3d 220 (5th

Cir. 2012).  All three of these courts of appeal looked at the language of 11 U.S.C.

§ 101(10A) and found that the definition specifically excluded social security benefits from

the calculation of projected disposable income.  Baud, 634 F.3d. at 345-47; Cranmer, 697

F.3d. at 1317-18; Ragos, 700 F.3d at 223.  The courts in Cranmer and Ragos found

additional authority for excluding social security benefits from projected disposable income

in 42 U.S.C. § 407(a) of the Social Security Act which provides:

> ... [N]one of the monies paid or payable or rights existing
> under this subchapter shall be subject to execution, levy,
> attachment, garnishment, or other legal process, or *to the
> operation of any bankruptcy or insolvency law*.

(emphasis added).  See Cranmer, 697 F.3d. at 1318; Ragos, 700 F.3d at 223-24.

The Trustee argues that prior to BAPCPA, projected disposable income (for all

debtors) was calculated by reference to Schedules I and J.  The Trustee argues that

BAPCPA's amendments were additions to the Code, not a rewrite of the Code.  Since Form

B22C is only used to calculate the disposable income of above-median debtors, in the

absence of any other Official Form applicable to below-median debtors, the Trustee argues

that the pre-BAPCPA practice of using Schedules I and J should be followed.

Prior to BAPCPA, former section 1325(b)(2) defined "disposable income" as

follows:

> For purposes of this subsection, "disposable income" means
> income which is received by the debtor and which is not
> reasonably necessary to be expended–
>         (A) for the maintenance or support of the debtor or a
> dependent of the debtor, including charitable contributions
> (that meet the definition of "charitable contribution" under
> section 548(d)(3)) to a qualified religious or charitable entity
> or organization (as that term is defined in section 548(d)(4)) in

12

an amount not to exceed 15 percent of the gross income of the
debtor for the year in which the contributions are made; and
 (B) if the debtor is engaged in business, for the
payment of expenditures necessary for the continuation,
preservation, and operation of such business.

11 U.S.C. § 1325(b)(2) (amended 2005)(emphasis added).  BAPCPA changed section

1325(b)(2) to provide, in part, that "disposable income" means current monthly income,

which in turn is defined in section 101(10A)(B) to specifically exclude social security

benefits.  Amended section 1325(b)(2) and section 101(10A)(B) are applicable to both

above-median and below-median debtors.  Thus, social security benefits are simply not

disposable income for purposes of section 1325(b)(2).  Since Schedule I includes social

security benefits, the change to section 1325(b)(2) means that Schedule I is no longer used to

determine "disposable income".

  The Trustee argues that not including social security benefits would be tantamount to

using the "mechanical approach" to determine projected disposable income (simply

calculating the six month average of current monthly income) rejected by the Supreme Court

in Lanning.  The Trustee argues that applying the "forward-looking approach" adopted by

the Court in Lanning requires that known changes (i.e. the social security benefits) be

recognized and included in the calculation.  Although Mr. Lundy's social security benefits

are virtually certain to recur in the future, there has been no change in the Lundys'

circumstances or in any income stream.  Ragos, 700 F.3d at 225.  See Cranmer, 697 F.3d at

1317 (continued receipt of social security benefits is not a change in income).  "If Congress

excluded social security income from current monthly income and disposable income, it

makes little sense to circumvent that prohibition by allowing social security income to be

13

included in <u>projected</u> disposable income.  (emphasis in original).  <u>Ragos</u>, 700 F.3d at 223.

<u>See also</u> <u>Baud</u>, 634 F.3d at 345.

The Trustee argues that Line 23 on Form B22C (the form used to calculate current

monthly income, the applicable commitment period and disposable income) provides that

for below-median income debtors, "Disposable income is not determined under

§ 1325(b)(3)."  Thus, the Trustee argues that the only basis for determining "disposable

income" is by reference to Schedules I (which include social security benefits) and J.

However, the term "projected disposable income" is composed of an income component and

an expense component.  Section 1325(b)(3) addresses only the expense component and

provides that for above-median debtors, the expenses to be deducted from current monthly

income are those expenses allowed under the means test in section 707(b)(2).  However, for

below-median income debtors, the method for determining what "reasonably necessary"

expenses are deducted from current monthly income is the same as under pre-BAPCPA

practice.  <u>8 Collier on Bankruptcy</u>, ¶ 1325.11 [4][c][ii](16th ed. 2012); Keith M. Lundin &

William H. Brown, Chapter 13 Bankruptcy, 4th Edition § 470.1.  Thus, for below-median-

income debtors, Schedule J will provide a source of information for what "reasonably

necessary" expenses are deducted from current monthly income.  However, as explained

above, the income component of "projected disposable income" for both above-median and

below-median debtors is determined in accordance with sections 1325(b)(2) and

101(10A)(B) (which excludes social security benefits) and not Schedule I.[16]

---

[16] Furthermore, the Court notes that if Schedule I was used to determine the projected
disposable income of below-median debtors, below-median (i.e. lower income) debtors
would have to pay into their plan their social security benefits but above-median (i.e. higher

The Trustee argues that since the projected disposable income of above-median debtors is not determined using Schedules I and J, the failure to use those schedules for below-median debtors makes those schedules superfluous, which could not have been the intent of Congress. However, as discussed above, for below-median income debtors, Schedule J will provide a source of information for what "reasonably necessary" expenses are deducted from current monthly income. In addition, since Schedule I discloses all of the debtor's income, regardless of source, Schedule I will continue to be relevant on the issue of feasibility.

Consistent with the overwhelming majority of the reported decisions, this Court finds that social security benefits are specifically excluded from "current monthly income" as that term is defined by 11 U.S.C. § 101(10A) and are not to be included in the calculation of "projected disposable income" under section 1325(b)(1)(B). Accordingly, with respect to the Lundy case, the Trustee's "projected disposable income" objection under section 1325(b)(1)(B) is overruled.

Ms. Scott's Social Security Benefits.

In the Scott case, the issue is whether the social security benefits of the non-filing spouse must be included in the calculation of "projected disposable income". The resolution of this question is not as clear cut.

In the case of In re Olguin, 429 B.R. 346 (Bankr. D.Colo. 2010), the court considered the issue of whether social security benefits of the grandparents who were living with the

_____

income) debtors could exclude such benefits. There is no indication in the statute that Congress intended this result.

debtor and contributing to the expenses of the household should be included in the

calculation.  Looking at the text of section 101(10A), the court concluded that the exclusion

of social security benefits under section 101(10A)(B) was limited to the social security

benefits of debtors and co-debtors.  Id. at 349.  Accordingly, the court ruled that the social

security benefits of the grandparents must be included in the calculation of the debtor's

projected disposable income.

However, three reported cases have concluded that the social security benefits of a

non-filing spouse are not included in the calculation.  In the cases of In re Wilson, 397 B.R.

299 (Bankr. M.D. N.C. 2008) and In re Bartelini, 434 B.R. 285 (Bankr. N.D. N.Y. 2010), the

courts concluded that, based on the text of section 101(10A), the social security benefits of

non-filing spouses was not to be included in calculating projected disposable income.

However, other than the general conclusion that section 101(10A)(B) specifically excluded

social security benefits, neither the Wilson court nor the Bartelini court discussed why such

exclusion applied to non-debtor benefits.

In the third case, In re Miller, 445 B.R. 504 (Bankr. D. S.C. 2011), the court

specifically addressed the exclusion and its applicability to non-filing spouse benefits.  The

court looked at the treatment of social security benefits under the exemption statute, 11

U.S.C. § 522(d)(10)(A).  That Code section allows debtors to exempt, "*The debtor's right to*

*receive*-(A) a social security benefit...". (emphasis supplied).  The court then concluded:

> The language of section 101(10A) states that "benefits
> received under the Social Security Act" are excluded from
> current monthly income.  Section 101(10A) does not specify
> that those benefits must be payable to the debtor, as the
> language in section 522 indicates.  The different language

16

> qualifying the scope of the sections leads to the conclusion
> that Congress intended different treatment for Social Security
> benefits in the context of calculating a debtor's current
> monthly income than Social Security benefits in the context of
> debtor's exemptions.  The Court finds that based on the plain
> language of section 101(10A) and section 522(d)(10)(A), it
> was Congress's intent to exclude all Social Security benefits
> from the calculation of current monthly income, regardless of
> whether those benefits are personal to the debtor.

Id. at 507.  Thus, the court found that the social security benefits of the non-debtor spouse

was excluded.  The court also held that excluding the non-debtor spouse's social security

benefits was consistent with 42 U.S.C. § 407(a) of the Social Security Act.  Id.

This Court finds the reasoning in the case of In re Miller persuasive.  The Court also

notes that it would be anomalous to conclude that Ms. Scott's social security benefits *would*

*not* be included if she had filed a joint case with her husband, but *would* be included if she

did not file a joint case.  Accordingly, with respect to the Scott case, the Trustee's objection

under section 1325(b)(1)(B) is overruled.

Good Faith

In both cases before the Court, the Trustee argues that by failing to include the social

security benefits, the plans have not been proposed in good faith.  Pursuant to section

1325(a)(3), a court may confirm a plan only if "the plan has been proposed in good faith".

In Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens), 702 F.2d 885 (11th

Cir. 1983), the Eleventh Circuit Court of Appeals applied the "totality of circumstances"

approach to determine whether a Chapter 13 plan has been filed in good faith.  However, the

Eleventh Circuit has not addressed the issue of whether the exclusion of social security

benefits from plan payments can be considered as a factor in determining whether a plan has

been proposed in good faith.  The Fifth Circuit, in <u>Ragos</u>, <u>supra</u>, and the Tenth Circuit, in

<u>Cranmer</u>, <u>supra</u>, have considered the issue.

In <u>Ragos</u>, the Fifth Circuit held that failure to pay in the social security benefits did

not constitute:

> ...evidence that the Debtors have acted in bad faith or seek any
> improper result.  Having already concluded that Debtors' plan
> fully complied with the Bankruptcy Code, it is apparent that
> Debtors are not in bad faith merely for doing what the Code
> permits them to do.  We thus hold that retention of exempt
> social security benefits alone is legally insufficient to support
> a finding of bad faith under the Bankruptcy Code.

700 F.3d at 227-28.

In <u>Cranmer</u>, the Tenth Circuit held:

> In evaluating a debtor's good faith, courts should consider
> eleven non-exclusive factors as well as any other relevant
> circumstances....
>
> When a Chapter 13 debtor calculates his repayment plan
> payments exactly as the Bankruptcy Code and Social Security
> Act allow him to, and thereby excludes SSI, that exclusion
> cannot constitute a lack of good faith...
>
> It simply was not bad faith for [the debtor] to adhere to the
> provisions of the Bankruptcy Code and, in doing so, obtain a
> benefit provided by it.

697 F.3d. at 1318-19.

The only reported Georgia bankruptcy decision to consider this issue is <u>In re</u>

<u>Thomas</u>.  443 B.R. 213 (Bankr.N.D. Ga. 2010).  In that case, Judge Murphy explained:

> The Eleventh Circuit Court of Appeals uses a *totality of the
> circumstances* approach to determine whether a Chapter 13
> debtor's plan satisfies the good faith requirement of
> §1325(a)(3).  *In re Saylors*, 869 F.2d 1434 (11th Cir. 1989);

18

*Kitchens v. Georgia RR Bank and Trust Co.* (*In re Kitchens*),
702 F.2d 885 (11th Cir. 1983); *In re Shelton*, 370 b.R. 861
(Bankr. N.D. Ga 2007) (Murphy, J.). The *totality of the
circumstances* test is flexible and fact specific. *See Kitchens*,
702 F.2d at 889. Among many factors, courts may consider
excluded and exempt assets that could create a surplus for a
debtor or illustrate a manipulation of the Code. *Shelton*, 370
B.R. at 868. *See In re Caldwell*, 895 F.2d 1123, 1126-27 (6th
Cir. 1990). *But see In re Barfknecht*, 378 B.R. 154, 165
(Bankr. W.D. Tex. 2007) (express exclusion of SSI from
income inhibits a court from considering the income and
surplus derived from the SSI as part of the good faith
analysis). A plan's attempt to pay creditors may not satisfy
the good faith requirement if the plan is not "consistent with a
debtor's available resources." *In re Okoreeh-Baah*, 836 F.2d
1030, 1033 (6th Cir. 1988). Courts also compare a "debtor's
choices in relation to [the] treatment of creditors." *See In re
Allawas*, 2008 WL 6069662 *1 at *5 (Bankr. D. S.C. 2008).
By enacting BAPCPA, "Congress...indicated a clear intent to
curb opportunistic filings and its displeasure with the practice
of allowing debtors, who are able to repay their debts, to avoid
their obligations to creditors." *In re Edmunds*, 350 B.R. 636,
649 (Bankr. D. S.C. 2006) (citing H.R.Rep. No. 109-31(1), at
5 (2005)). Another factor is the amount of effort required by a
debtor to complete the plan. *Kitchens*, 702 F.2d at 889. The
easiest way to fail the good faith test, however, is for a debtor
to "misrepresent, lie or otherwise mislead the court." *Shelton*,
370 B.R. at 868 (citing *In re Le Maire*, 898 F.2d 1346, 1352
(8th Cir. 1990)). *See also In re Westing*, 2010 WL 2774829
*1, *3-*4 (Bankr. D. Idaho July 13, 2010); *In re Rodgers*, No.
09-13886-ALP at 3 (Bankr. M.D. Fla. May 19, 2010).

443 B.R. at 217-18. (emphasis in the original). (footnote omitted).

Judge Murphy then held that the failure to include social security benefits in

payments to unsecured creditors could be considered as a factor in determining good faith.

Id. at 219. Judge Murphy concluded that the debtor was paying nothing to unsecured

creditors under the plan and at the same time was accumulating social security benefits each

month which totaled more than two times the plan payment. Since including the social

security benefits in the plan payments would have resulted in a payment of one hundred percent to unsecured creditors in twenty-one months, Judge Murphy found that the plan had not been proposed in good faith.  Id.

This Court is reluctant to adopt a per-se rule that the exclusion of social security benefits can never be considered as a factor in determining good faith.  However, in the two cases at bar, such a determination is not necessary.

In the Scott case, since he is an above-median debtor, his projected disposable income is calculated in accordance with section 1325(b)(3) on Form B22C, Line 59.  His monthly disposable income (excluding Ms. Scott's social security benefits) is a negative $949.80.  Thus, even if Ms. Scott's social security benefits of $780 were included, Scott's monthly disposable income would still be a negative $169.80 and, pursuant to section 1325(b)(1)(B), he would have no projected disposable income to pay to unsecured creditors.  Nevertheless, he has voluntarily agreed to pay unsecured creditors a nineteen percent dividend.  There is no argument by the Trustee that any of the other Kitchens factors are present.  Since Scott is doing more than he is required to do under the Code, the Court finds that his plan has been proposed in good faith.

In the Lundy case, excluding Mr. Lundy's social security benefits leaves a projected disposable income of negative $312.  Nevertheless, the plan proposes to pay $550 per month, resulting in a $26,225.54 distribution to unsecured creditors.  Even if Mr. Lundy's social security benefits were added for the three year commitment period, the resulting increase would result in a payment of $31,550.63, an increase of only $5,325.09.  This is not the type of payment discrepancy that Judge Murphy found to evidence bad faith in Thomas.

There is no argument by the Trustee that any of the other <u>Kitchens</u> factors are present.  Since the Lundys are doing more than they are required to do under the Code, the Court finds that their plan has been proposed in good faith.

<u>Lundy Plan Extension</u>

The Trustee objects to the Lundys extending the duration of their plan to five years. As below-median-income debtors, the applicable commitment period for the Lundys' plan is three years.  11 U.S.C. § 1325(b)(4)(A)(i).  The Court may, however, for cause approve a plan with a duration up to five years.  11 U.S.C. § 1322(d)(2).  An extension "may be allowed in cases in which the debtor wishes to pay a somewhat higher dividend to unsecured creditors."  <u>Collier on Bankruptcy</u>, ¶ 1322.18[1][b].  Extension of the Lundys' plan from three to five years will result in unsecured creditors receiving additional payments, which the Court concludes is sufficient cause to approve the extension.

For the reasons set forth herein, the Court will enter a separate order in each case overruling the Trustee's objections to confirmation of the plans filed by Scott and the Lundys.  The Trustee is instructed to advise the Court when these cases are ready for final hearings on confirmation.